## VOLUME 89.

AND

## New York State Reporter,

## VOLUME 123.

(96 App. Div. 91.)

### ROCKEFELLER v. LAMORA.

(Supreme Court, Appellate Division, Third Department. June 30, 1904.)

1. FISH AND GAME—PRIVATE PARKS—STOCKING WITH FISH—EFFECT.

Under Laws 1900, c. 20, § 200, providing that waters stocked with fish by the state shall not be laid out in any private park, and that, if waters in any such park are stocked by the state with the consent of the owner, the provisions of the statute providing for the laying out of a private park shall not apply thereto, the stocking of private waters with fish results in a charge on the land, which runs with the land, and not with the person of the owner, and which is fixed at the time that the consent is given and the waters are stocked in pursuance thereto, so that it cannot be extended to other lands and waters by reason of the fact that the grantee of the waters stocked with fish by the state and of the other lands and waters is one and the same person.

2. CORPORATIONS—PRESIDENT—POWERS—MODE OF DELEGATION.

The president of a corporation has not power ex officio to bind the corporation or control its property, but his power as an agent must be sought in the organic law of the corporation, or in a delegation of authority from it directly or through its board of directors, formally expressed, or implied from a habit or custom of doing business.

3. SAME.

A corporation was created, as shown in its certificate, for the purpose of carrying on the manufacture of lumber and other products of the forests. Its by-laws provided that the notes and other obligations of the company should be signed by the president, who should also sign and execute contracts, deeds, or other written instruments relating to the conveyance of any real estate belonging to the company, and should make all contracts for the corporation relating to the manufacture and sale of lumber, and to business carried on by the company, including sales of its real estate. *Held*, that an oral assent by the president of the com-

89 N.Y.S.—1

pany to the stocking of certain waters flowing through its property with trout was merely a personal consent, and was not, and could not be, binding on the corporation.

Appeal from Trial Term, Franklin County.

Action by William Rockefeller against Oliver Lamora. From a judgment dismissing the complaint, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Kellas & Genaway (John P. Kellas, of counsel), for appellant.

Saunders & Saunders (Rollin B. Sanford, of counsel), for respondent.

CHASE, J. On an appeal from a former judgment in favor of the defendant, the judgment was reversed, and this court granted a new trial in the County Court. On the new trial the case was submitted to a jury, and a verdict was rendered in favor of the defendant, upon which judgment was entered, and from which judgment this appeal is taken.

It is unnecessary on this appeal to consider the questions discussed in the opinion on the former appeal. Rockefeller v. Lamora, 85 App. Div. 254, 83 N. Y. Supp. 289. This court then said:

"The Legislature could not authorize the State Fish Commissioners to enter upon a man's private fishery without his knowledge and consent, and deposit therein fish hatched by the state, and thus convert his property to public use and destroy his private rights. This would be the taking of private property for public use without just compensation. * * * The owner of a stream could doubtless dedicate it to the public use, as he could his lands to a public highway; but this imports consent on his part, and a bargain entered into between him and the public authorities. * * * Our interpretation of the statute is that the stocking of streams and waters, the beds and adjacent lands of which are owned by an individual or corporation, in order to give the right to the public to fish therein, must be with the consent of the owner or one having a right of fishery therein, and that only the particular stream, lake, or pond thus stocked is so made public, and that such stocking does not open to the public streams to which they may be tributary, and that this stocking of such a stream by the state and the owners above or below does not have the effect of opening to the public that part of the stream situated on lands of an owner who has not consented to such dedication, and that the public is not permitted to follow the migrations of the fish, and take them in that part of the stream on private lands without the owners' consent."

There is no dispute about the plaintiff's ownership and possession of the land and water upon which the defendant trespassed, nor that the plaintiff had complied with the provisions of the statute (article 11 of the forest, fish, and game law; chapter 20, p. 58, Laws 1900) for the purpose of establishing his lands and waters as a private park, nor that the defendant on three different occasions in the months of April and May, 1902, went across the plaintiff's lands included in his said private park, and fished in a stream thereon, and took fish therefrom, after he was expressly forbidden to so enter and fish thereon. The defendant's contention is that the plaintiff is not entitled to the benefit of said statute authorizing the laying out of his lands and waters as a private park, and

the devotion of the same to the propagation or protection of fish, birds, or game, by reason of the fact that waters included in said private park had been theretofore stocked with fish by the state of New York. It is not claimed that the lands and waters included in said private park have been stocked with fish by the state at the request or with the consent of the plaintiff. The lands and waters so included in said private park were purchased by the plaintiff in three separate tracts, each tract including a large number of acres. When waters are stocked with fish by the state, it takes away from the owner thereof certain property rights provided by said statute, and results in a charge to run with the land, which materially affects the owner's interest therein, and the value of said lands and waters. The consent to such charge is bounded by the extent of the ownership of the person giving the consent. Within the bounds of the lands and waters owned by the person giving the consent, there may be a question as to the extent of the waters included within the consent, and as to one stream or portion of the stream being reasonably near to the waters so stocked with fish by the state. A question cannot arise as to whether another stream, or a distinct portion of the same stream, is reasonably near to waters stocked with fish by the state, when such other stream, or distinct portion of the same stream, is beyond the boundaries of the lands and waters owned by the person giving his consent to such stocking by the state. The charge runs with the land, and not with the person, and it is fixed at the time the consent is given, and the waters are stocked in pursuance thereof. It cannot be extended to other lands and waters simply by reason of the fact that the grantee of the waters stocked with fish by the state and of adjoining or other lands and waters is one and the same person. The lands and waters upon which the defendant trespassed were wholly lands and waters purchased by the plaintiff of the Ducey Lumber Company. It follows, therefore, that all of the evidence included in the record relating to lands purchased by the plaintiff of other persons is immaterial, for the purpose of showing that they are reasonably near to the lands purchased of the Ducey Lumber Company.

It is claimed by the defendant that the Ducey Lumber Company consented to persons who were strangers to their title stocking the waters upon lands so owned by it with fish furnished at the expense of the state. The evidence shows that one Ducey, who, it is alleged, was the president of the Ducey Lumber Company, assented orally to certain persons stocking the St. Regis waters with trout. Assuming that the waters included in said private park at the place where the defendant fished were so stocked pursuant to said consent, it becomes important to determine whether the corporation was bound by such assent, so as to make a charge on its lands, even in the hands of a bona fide purchaser from it. The certificate of incorporation shows that the Ducey Lumber Company was organized "for the purpose of carrying on and conducting the manufacture of lumber, lath, shingles, shooks, ties, pickets, charcoal, wood pulp and other products of the forest." The by-laws of the corporation provide:

"The notes, drafts, and other obligations of the company, as well as its checks on banks, shall be signed by the president; he shall also sign and execute all contracts, leases, deeds, or other written instruments relating to the sale or conveyance of any real estate belonging to the company and affix the corporate seal thereto. The president is also authorized and empowered to make all contracts for the corporation, relating to the manufacture and sale of lumber, and all business carried on by the company, including sales of its real estate, or contracts to sell or lease the same."

The office of president does not in itself confer power to bind a corporation or control its property. The president's power as an agent must be sought in the organic law of the corporation or in a delegation of authority from it, directly or through its board of directors, formally expressed, or implied from a habit or custom of doing business. 10 Cyclopedia of Law & Procedure, 903. The stocking of waters with fish furnished at the expense of the state was not one of the purposes for which said corporation was organized, and the consent not being within the purposes of the corporation, or in the usual course of its business, or incidental thereto, the president had no power to make it without express authority. Said by-law constitutes the only evidence relating to the authority of the president. The consent was not a contract relating to the manufacture and sale of lumber, or to any business carried on by the company. The statements claimed to have been made by Mr. Ducey to the persons who desired to obtain from the state fish to be placed in certain waters of the Adirondacks do not purport to have been made by him on behalf of the Ducey Lumber Company. His consent was voluntary, gratuitous, and personal. He did not assume to bind the corporation, and could not have done so, in a matter so wholly foreign to the ordinary transactions of the business of the corporation, without express authority.

The documentary evidence received by the County Court is not sufficient to show that the waters of the plaintiff on lands other than those purchased of the Ducey Lumber Company have ever been stocked by the state.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.